UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

SYLVESTER PIERRE VINES,

       Plaintiff,

v.

CAROLYN W. COLVIN, Acting
Commissioner of the Social Security
Administration,

       Defendant.

CIVIL NO. SA-16-CV-249-PM

## MEMORANDUM DECISION AND ORDER

Pursuant to the consent of the parties in the above-styled and numbered cause of action to trial by the undersigned United States Magistrate Judge,[1] and consistent with the authority vested in the United States Magistrate Judges under the provisions of 28 U.S.C. § 636(c)(1) and Appendix C, Rule 1(i) of the Local Rules for the Assignment of Duties to United States Magistrate Judges in the Western District of Texas, the following memorandum decision and order is entered.

## I.  JURISDICTION

The Court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II.  BACKGROUND and SUMMARY OF PROCEDURAL HISTORY

This is an action to review a decision of the Commissioner of the Social Security Administration under § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).  Plaintiff Sylvester Pierre Vines initiated this action pursuant to 42 U.S.C. § 405(g) seeking review of the determination of Carolyn W. Colvin, the acting Commissioner of the Social Security

---

[1] Docket nos. 3, 9, 12.

Administration, that plaintiff is not disabled and not entitled to receive disability insurance benefits ("DIB").

Plaintiff filed an application for Title II DIB on July 18, 2014, alleging disability since July 17, 2014.[2]  The Social Security Administration ("SSA") denied DIB initially on October 27, 2014,[3] and upon reconsideration on February 17, 2014.[4]  On August 17, 2015, Bernard J. McKay, an administrative law judge ("ALJ"), held a hearing and considered plaintiff's claims *de novo*.[5]  Plaintiff was represented by an attorney at the hearing, and the ALJ received testimony from plaintiff as well as from vocational expert Robert Grant ("VE").[6]  The ALJ issued a written opinion on November 2, 2015, denying benefits and finding that plaintiff had not been disabled from July 17, 2014, through the date of the decision.[7]  Plaintiff requested Appeals Council review of the ALJ's decision, and on January 13, 2016, the Council concluded that no basis existed to grant review.[8]  Thus, the ALJ's determination became the final decision of the Commissioner.

Plaintiff filed an appeal of the Commissioner's determination and, on September 1, 2016, filed an opening brief raising a single issue, summarized below, asking the Court to reverse the

---

[2]  Transcript ("TR") at 140-141.

[3]  Id. at 92-95.

[4]  Id. at 105-107.

[5]  Id. at 24-62.

[6]  Id. at 57-60.

[7]  Id. at 10-19.

[8]  Id. at 1-3.

Commissioner's decision.[9]  On October 12, 2016, the Commissioner filed a responsive brief, arguing, in sum, that the ALJ's decision is supported by proper legal standards and substantial evidence.[10]  As of the time of the tendering of this decision to the District Clerk for filing, plaintiff had not filed a reply brief and the time to do so has expired.

### III.  ISSUE

Whether substantial evidence supports the ALJ's decision that plaintiff was not disabled under the Social Security Act.

### IV.  STANDARD OF REVIEW

In reviewing the Commissioner's decision, the Court is limited to a determination of whether the decision is supported by substantial evidence and whether the Commissioner applied the proper legal standards in evaluating the evidence.[11]  Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.[12]  It must do more than create a suspicion of the existence of the fact to be established, but "no substantial evidence" will be found only where there is a conspicuous absence of credible choices or no contrary medical evidence.[13]

If the Commissioner's findings are supported by substantial evidence, they are conclusive

---

[9]  Docket no. 17.

[10]  Docket no. 18 at 8.

[11]  Boyd v. Apfel, 239 F.3d 698, 704 (5th Cir. 2001).

[12]  Id.

[13]  Abshire v. Bowen, 848 F.2d 638, 640 (5th Cir. 1988).

3

and must be affirmed.[14]  "The court does not re-weigh the evidence in the record, try the issues *de novo*, or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision."[15]  Conflicts in the evidence are for the Commissioner to resolve.[16]  Four elements of proof are weighed in determining if substantial evidence supports the Commissioner's determination:  (1) objective medical facts, (2) diagnoses and opinions of treating and examining physicians, (3) the claimant's subjective evidence of pain and disability, and (4) the claimant's age, education and work experience.[17]

## V.  ALJ'S FINDINGS AND PLAINTIFF'S CONTENTIONS

**A.     Summary of the ALJ's Decision**

The ALJ stated the issue was whether plaintiff was disabled pursuant to sections 216(i) and 223(d) of the Social Security Act.[18]  The ALJ defined disability as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, or combination of impairments, that could be expected to result in death, or that has lasted, or can be expected to last, for a continuous period of not less than twelve months.[19]  The ALJ noted there was an additional issue with respect to plaintiff's claim for a period of

---

[14]  <u>Martinez v. Chater</u>, 64 F.3d 172, 173 (5th Cir. 1995).

[15]  <u>Carey v. Apfel</u>, 230 F.3d 131, 135 (5th Cir. 2000).

[16]  <u>Id.</u>

[17]  <u>Martinez</u>, 64 F.3d at 174.

[18]  TR at 10.

[19]  <u>Id.</u>

disability—whether the insured status requirements of sections 216(i) and 223 were met.[20]  The ALJ found plaintiff's earnings record showed plaintiff had acquired sufficient quarters of coverage to remain insured through December 31, 2018.[21]  Thus, according to the ALJ, plaintiff needed to establish disability on or before that date to be entitled to a period of disability and DIB.[22]

The ALJ next explained the five-step sequential evaluation process for determining whether an individual is disabled, and noted that the steps are to be followed in order.[23]  The ALJ then analyzed whether plaintiff met the criteria for disability pursuant to these steps and made findings of facts and conclusions of law.[24]

**Step 1 findings**.  The ALJ determined plaintiff had not engaged in substantial gainful activity since the alleged onset date of July 17, 2014.[25]

**Step 2 findings.**  The ALJ found plaintiff had the severe impairments of pes planus/foot disorders, headaches, and major depressive disorder.[26]  The ALJ determined that "[a]lthough claimant alleges other impairments, the claimant's records documented no other severe medically

---

[20]  Id.

[21]  Id.

[22]  Id.

[23]  Id. at 10-12 (citing 20 C.F.R. §§ 404.1509, 404.1512(g), 404.1520(a)-(g), 404.1521, 404.1525, 404.1526, 404.1545, 404.1560(b) and (c), 404.1565, 404.1572(a) and (b), 404.1574, 404.1575 and Social Security Rulings ("SSR") 85-28, 96-3p, 96-4p, 96-8p).

[24]  Id. at 12-19.

[25]  Id. at 12 (citing 20 C.F.R. § 404.1571, *et seq*.).

[26]  Id. (citing 20 C.F.R. § 404.1520(c)).

determinable impairments."[27]

**Step 3 findings**.  The ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the impairments listed in "20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526)."[28]  The ALJ expressly considered listings section 1.02, stating "the claimant's medical records provided insufficient evidence to show the inability to ambulate effectively to meet or medically equal the criteria of that listing."[29]

The ALJ also considered listings section 12.04, stating, "[t]he severity of the claimant's mental impairment does not meet or medically equal the criteria of listing 12.04."[30]  In making this finding, the ALJ considered whether the 'paragraph B' criteria were satisfied, which requires the mental impairment to result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration.[31]  The ALJ noted that "[a] marked limitation means more than moderate but less than extreme."[32]  The ALJ determined "[i]n activities of daily living, the claimant has mild

---

[27] Id.

[28] Id. at 13.

[29] Id.

[30] Id.

[31] Id.

[32] Id.

restriction;"[33] "[i]n social functioning, the claimant has moderate difficulties;"[34] "[w]ith regard to concentration, persistence or pace, the claimant has moderate difficulties;"[35] and "the claimant has experienced no episodes of decompensation, which have been of extended duration."[36]

The ALJ also stated he "considered whether the 'paragraph C' criteria are satisfied."[37] The ALJ determined "the evidence failed to establish the presence of 'paragraph C' criteria because there was insufficient evidence of decompensation, marginal adjustment, or inability to function."[38]

**Residual functional capacity finding.**  Having determined that plaintiff suffered from severe impairments that did not meet or equal a listed impairment, and before considering step 4, the ALJ proceeded to assess plaintiff's RFC.[39]  The ALJ stated that he had considered all of plaintiff's symptoms and the extent to which his symptoms could "reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. § 404.1529 and SSRs 96-4p and 96-7p."[40]  The ALJ confirmed that he had considered the opinion evidence, as required by 20 C.F.R. § 404.1527 and SSRs 96-2p, 96-5p, 96-6p and 06-

---

[33] Id.

[34] Id.

[35] Id.

[36] Id. at 14.

[37] Id.

[38] Id.

[39] Id. at 14-18.

[40] Id. at 14.

3p.[41]  The ALJ also indicated that he had used the two-step process applicable to RFC

determinations.[42]  Under that process, the ALJ must first determine "whether there is an

underlying medically determinable physical or mental impairment(s) . . . that could reasonably be

expected to produce the claimant's pain or other symptoms."[43]  Second, the ALJ "must evaluate

the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent

to which they limit the claimant's functioning."[44]  The ALJ noted that "whenever statements

about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not

substantiated by objective medical evidence," the ALJ "must make a finding on the credibility of

the statements based on a consideration of the entire case record."[45]

The ALJ assessed plaintiff with the following RFC:

[C]laimant has the [RFC] to perform light work, lifting/carrying 20 pounds
occasionally, lifting/carrying 10 pounds frequently, standing/walking 6 hours in an
8 hour day, and sitting 6 hours in an 8 hour day, with the option to alternate sitting
and standing.  The claimant also requires an indoor environment with controlled
temperatures and with sound/noise at normal office levels.  In addition, the
claimant can understand, remember, and carrying out simple instructions, make
simple decisions, attend and concentrate for an extended period, and respond
appropriately to changes in routine work settings, but he is limited to no more
than occasional interaction with co-workers.[46]

The ALJ considered the claimant's testimony that "he was no longer able to work,

---

[41] Id.

[42] Id.

[43] Id. at 14-15.

[44] Id. at 15.

[45] Id.

[46] Id. at 14 (citing 20 C.F.R. § 404.1567(b); SSRs 83-10, 96-8p).

beginning in July 2014, due to depression, anxiety, shin splints, headaches, leg pain/numbness, arm pain, and ankle pain/swelling."[47]  The ALJ noted the claimant's report that he "experiences daily headaches and numbness in his arms and fingers," "he is prescribed medications for pain, which are not effective," and "he experiences nightmares, sleep disturbances, hypervigilance, decreased concentration, and difficulty concentrating."[48]  The ALJ also considered the claimant's wife's report that "the claimant has a difficult time being around people and new routines, and he has difficulty remembering things,"[49] "but give[s] greater weight to the medical evidence."[50]

The ALJ determined, "[a]fter careful consideration of the evidence," that the "claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible."[51] The ALJ found the "claimant's description of symptoms was quite vague and general, lacking the specificity or support of the medical evidence."[52]  Further, the ALJ determined the claimant "described daily activities which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations."[53]

---

[47] Id. at 15.

[48] Id.

[49] Id. (citing Ex. 6E2).

[50] Id.

[51] Id.

[52] Id.

[53] Id.

With regard to the claimant's mental impairments, the ALJ discussed the claimant's "history of mental health treatment."[54]  The ALJ noted that "[i]n August 2014, the claimant reported improved nightmares, but he had some conflicts at work,"[55] and "[i]n September 2014, the claimant reported experiencing family problems."[56]

The ALJ also noted that "in October 2014, the claimant reported experiencing depression since approximately 2008-2009, with symptoms including nightmares, difficulty concentrating and remembering, decreased energy, and flashbacks."[57]  The ALJ considered the claimant was "noted as giving vague answers to questions about his symptoms, but his mental status examination was generally normal, with a reserved mood and mildly constricted affect;" "[h]is full scale IQ was 65, which was in the extremely low range, but the examining psychologist noted that was not consistent with his educational and occupational history;"[58] and "[t]esting showed no significant global cognitive decline, but there appeared to be a memory deficit."[59] The ALJ also considered the claimant "was diagnosed with major depressive disorder, unspecified anxiety disorder, and unspecified neurocognitive disorder" and "[t]he examining psychologist noted the claimant's ability to reason and make occupational, personal, and social

---

[54] Id. at 16 (citing Ex. 2F3).

[55] Id. (citing Ex. 2F42).

[56] Id. (citing Ex. 6F125).

[57] Id. (citing Ex. 5F3).

[58] Id. (citing Ex. 5F4).

[59] Id. (citing Ex. 5F5).

adjustments seemed moderately impaired."[60]  The ALJ determined "[t]hat opinion was supported by the examination findings, but was not consistent with the record as a whole," and "[gave] it partial weight."[61]

The ALJ considered "[i]n November 2014, the claimant reported some anxiety and significant stressors"[62] and "was assessed with major depressive disorder."[63]  The ALJ also considered in January 2015, "a physical evaluation board determined the claimant was physically unfit for duty due to major depressive disorder, recurrent, severe, without psychotic features, and the board recommended a rating of 50% disability."[64]  The ALJ noted at "an initial psychiatric assessment in July 2015, the claimant had a depressed mood and angry affect,"[65] and "reported memory problems, but [] did not want to take prescribed drugs."[66]  The ALJ also noted in August 2015, the claimant "continued to have a depressed mood and angry affect"[67] and "started, but did not always complete sentences, rolled his eyes, and frequently responded to question[s] with comments about poor memory or knowledge."[68]

---

[60]  Id. at 16-17 (citing Ex. 5F7).

[61]  Id. at 17.

[62]  Id. (citing Ex. 6F32).

[63]  Id. (citing Ex. 6F33).

[64]  Id. (citing Ex. 7F3).

[65]  Id. (citing Ex. 12F3).

[66]  Id. (citing Ex. 12F4).

[67]  Id. (citing Ex. 12F7).

[68]  Id. (citing Ex. 12F8).

The ALJ also reviewed a form submitted by the claimant's social worker, which indicated:

> the claimant has moderate limitations in the ability to understand and remember short, simple instructions, the ability to understand, remember, and carry out detailed instructions, the ability to interact appropriately with the public, supervisors, and co-workers, the ability to respond appropriately to work pressures in a usual work setting, and the ability to respond appropriately to changes in a routine work setting.[69]

The social worker "also noted the claimant's medical and behavioral health conditions negatively impacted his daily functioning to the point where he could not longer fully perform the duties of an active duty soldier."[70]  The ALJ determined "[t]hat opinion, which is not from an acceptable medical source, was generally supported by the evidence, and I give it partial weight."[71]

The ALJ also considered the opinions of the state agency medical experts.  The ALJ stated "[t]he State agency reviewing psychologist and psychiatrist concluded the claimant can understand, remember, and carry out only simple instructions, make simple decisions, attend and concentrate for extended periods, interact adequately with co-workers and supervisors, and respond appropriately to changes in routine work settings."[72]  The ALJ found "[t]hose opinions were generally supported by the evidence, and I give them partial weight."[73]

The ALJ noted that the claimant "reported he was awarded a 100% disability rating by the

---

[69]  Id. (citing Ex. 8F2-3).

[70]  Id. (citing Ex. 9F5-6).

[71]  Id.

[72]  Id. (citing Exs. 1A, 2A).

[73]  Id.

Department of Veterans Affairs."[74]  The ALJ stated a "Department of Veterans Affairs rating of even total and permanent disability is not legally binding on the Commissioner."[75]  The ALJ determined "the evidence did not show that the claimant's impairments would contraindicate claimant's engaging in all substantial gainful activity, as defined by the Social Security Regulations" and gave "greater weight to the medical evidence in the records."[76]

**Step 4 findings**.  The ALJ determined that plaintiff "is unable to perform any past relevant work" as a petroleum supply specialist, baggage handler/ramp agent, retail clerk, meat packager, and radio communications technician, relying on the VE's testimony.[77]

**Step 5 findings.**  The ALJ found plaintiff capable of performing other work in the national and regional economy.[78]  The VE testified that a person of plaintiff's age, education, work experience, and RFC could work as an assembler of eyeglasses (713.687-018), stuffer of toys and sporting goods (731.685-014), and garment tag stringer (794.687-054).[79]  Accordingly, the ALJ found that plaintiff had not been under a disability, as defined by the Social Security Act, at any time since the alleged onset date, July 17, 2014.[80]

---

[74] Id.

[75] Id.

[76] Id. at 17-18.

[77] Id. at 18 (citing 20 C.F.R. § 1565).

[78] Id. (citing 20 C.F.R. §§ 404.1569; 404.1569(a)).

[79] Id. at 19.

[80] Id. (citing 20 C.F.R. § 404.1520(g)).

**B.    Plaintiff's Contentions**

On September 1, 2016, plaintiff filed a brief seeking review of the Commissioner's decision and asking the Court to reverse or remand to the Commissioner for further proceedings.[81]  Plaintiff argues "the ALJ's finding that [plaintiff] is not disabled is not supported by substantial evidence."[82]  Specifically, plaintiff argues "[w]hen determining Plaintiff's RFC, the ALJ failed to properly accommodate plaintiff's mental limitations"[83] which "prevent him from being able to remember and understand even simple instructions, and attend and concentrate for extend periods, which would eliminate Plaintiff's ability to perform work related mental activities on a sustained based."[84]

## VI.  ARGUMENTS and CONCLUSIONS OF LAW

In this section the Court will discuss in greater detail the applicable legal standards before applying those standards to plaintiff's specific claims as raised in his brief.

**A.    Entitlement to Benefits**

Every individual who is insured for disability insurance benefits, has not attained retirement age, has filed an application for benefits, and is under a disability is entitled to receive disability insurance benefits.[85]  Each aged, blind or disabled individual who meets certain income

---

[81]  Docket no. 17.

[82]  Id. at 3.

[83]  Id. at 3-4.

[84]  Id. at 6.

[85]  42 U.S.C. § 423(a)(1).

and resources limitations is entitled to receive supplemental security income.[86]  The term

"disabled" or "disability" means the inability to engage in any substantial gainful activity by

reason of any medically determinable physical or mental impairment, which can be expected to

result in death, or which has lasted or can be expected to last for a continuous period of not less

than 12 months.[87]  A person shall be determined to be under a disability only if his physical or

mental impairment or impairments are of such severity that he is not only unable to do his

previous work but cannot, considering his age, education, and work experience, engage in any

other kind of substantial gainful work existing in significant numbers in the national economy,

regardless of whether such work exists in the immediate area in which he lives, or whether a

specific job vacancy exists for him, or whether he would be hired if she applied for work.[88]

## B.    Evaluation Process and Burden of Proof

Regulations set forth by the Commissioner prescribe that disability claims are to be

evaluated according to a five-step process.[89]  A finding that a claimant is disabled or not disabled

at any point in the process is conclusive and terminates the Commissioner's analysis.[90]  The first

step involves determining whether the claimant is currently engaged in substantial gainful

activity.  If so, the claimant will be found not disabled regardless of her medical condition or her

age, education, and work experience.  The second step involves determining whether the

---

[86]  Id. § 1382 (a).

[87]  Id. § 1382c(a)(3)(A).

[88]  Id. § 1382c(a)(3)(B).

[89]  20 C.F.R. §§ 404.1520 and 416.920.

[90]  Leggett v. Chater, 67 F.3d 558, 564 (5th Cir. 1995).

15

claimant's impairment is severe.  If it is not severe, the claimant is deemed not disabled.  In the

third step, the Commissioner compares the severe impairment with those on a list of specific

impairments.  If it meets or equals a listed impairment, the claimant is deemed disabled without

considering his age, education, and work experience.  If the impairment is not on the list, the

Commissioner, in the fourth step, reviews the claimant's RFC and the demands of his past work.

If he can still do this kind of work, he is not disabled.  If he cannot perform his past work, the

Commissioner moves to the fifth and final step of evaluating the claimant's ability, given his

residual capacities and his age, education, and work experience, to do other work.  If he cannot

do other work, he will be found to be disabled.  The claimant bears the burden of proof at the

first four steps of the sequential analysis.[91]  Once he has shown that he is unable to perform his

previous work, the burden shifts to the Commissioner to show that there is other substantial

gainful employment available that claimant is capable of performing.[92]  If the Commissioner

adequately points to potential alternative employment, the burden then shifts back to the claimant

to prove that he is unable to perform the alternative work.[93]

---

[91]  Id.

[92]  Anderson v. Sullivan, 887 F.2d 630, 632 (5th Cir. 1989).

[93]  Id. at 632-33.

**C.**     **Plaintiff's Claim in Appealing the ALJ's Decision**

Plaintiff argues the "ALJ finding that [plaintiff] is not disabled is not supported by substantial evidence"[94] and "[w]hen determining Plaintiff's RFC, the ALJ failed to properly accommodate Plaintiff's mental limitations."[95]  Specifically, plaintiff argues his "mental impairments prevent him from being able to remember and understand even simple instructions, and attend and concentrate for extended periods, which would eliminate Plaintiff's ability to perform work related mental activities on a sustained basis, preventing him from being able to perform competitive work."[96]  In response, the Commissioner argues "a State agency psychiatrist and a State agency psychologist reviewed Plaintiff's mental health care records and expressly opined that Plaintiff could understand, remember, and carry out simple instructions, and attend and concentrate for extended periods."[97]  The Commissioner also argues "[o]ther evidence of record also suggests that Plaintiff had much greater mental abilities than he claims in his brief," including plaintiff's completion of commercial driver's license training in Florida and plaintiff's job search for the petroleum specialist occupation.[98]

---

[94]  Plaintiff also asserts the ALJ's finding is the result of legal error (docket no. 17 at 2, 3, 7), but plaintiff identifies no legal error in the ALJ's finding.

[95]  Docket no. 17 at 3-4.

[96]  Id. at 6.

[97]  Docket no. 18 at 5.

[98]  Id. at 6-7.  Specifically, the Commissioner argues "[p]laintiff completed commercial driver's license ("CDL") training [] to become a truck driver," "[i]n the Dictionary of Occupational Titles ("DOT"), the heavy truck driver occupation is categorized at reasoning level 3," and "[a]n individual's ability to function at reasoning level 3 shows that he is, at the very least, able to carry out simple instructions."  Id. at 6.  The Commissioner also argues "[p]laintiff's job search for [petroleum specialist], as well as the representations [p]laintiff makes

Plaintiff has the burden of proving his disability at the administrative hearing and "the ALJ has a duty to fully develop the facts, or else the decision is not supported by substantial evidence."[99]  In all cases, the ALJ must consider all evidence of impairments in the record.[100]  In making the RFC finding, the ALJ stated he must consider all symptoms and the extent to which plaintiff's symptoms could "reasonably be accepted as consistent with the objective medical evidence and other evidence."[101]  The ALJ determined that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible."[102]

As an initial matter, the ALJ's mental RFC assessment is largely consistent with the mental RFC assessed by the state agency medical consultants at the initial and reconsideration levels of disability determination.[103]  The ALJ is entitled to resolve conflicts in the evidence and, after considering the record, conclude he would rely on objective medical facts and the

---

in his resume (Tr. 244), suggest that he does not, in fact, view himself as incapable of understanding, remembering, and carrying out simple instructions, or of maintaining concentration for an extended period."  Id. at 6-7.

[99]  Leggett, 67 F.3d at 564.

[100]  Carey, 230 F.3d at 142.

[101]  TR 14 (citing 20 C.F.R. § 1529(a); SSRs 96-4p and 96-7p).

[102]  Id. at 15.

[103]  Compare TR 14 (ALJ's mental RFC assessment) with TR 74 (agency psychologist Mischca Scales, Ph.D.'s February 12, 2015 mental RFC assessment at the reconsideration level). The agency psychologist and the ALJ agreed that plaintiff can understand, remember, and carry out simple instructions, make simple decisions, attend and concentrate for an extended period, and respond appropriately to changes in routine work settings.  The ALJ assessed a slightly more restrictive limitation regarding interaction with co-workers—not limited (agency psychologist), occasional (ALJ).  Leela Reddy, M.D.'s mental RFC assessment at the initial level was the same as Dr. Scales.  TR 86.

assessment by the state agency medical consultants.[104]   In determining the mental RFC, the ALJ

gave "partial weight" to the opinions of the state agency reviewing psychologist and

psychiatrist.[105]

 The ALJ also gave "partial weight" to the February 3, 2015 opinion of Captain Joanne

Taalib, plaintiff's social worker, stating the "opinion, which is not from an acceptable medical

source, was generally supported by the evidence."[106]   Captain Taalib indicated plaintiff had

moderate restriction in his ability to understand and remember short, simple instructions.[107]

Captain Taalib also indicated plaintiff had a slight restriction in his ability to carry out short,

simple instructions.[108]   The form completed by Captain Taalib defined "moderate" as "[t]here is a

moderate limitation in this area but the individual is still able to function satisfactorily" and

"slight" as "[t]here is some mild limitations in this area, but the individual can generally function

well."[109]   The ALJ's determination that plaintiff would be able to understand, remember, and

carry out simple instructions is consistent with Captain Taalib's findings.

 The ALJ also found plaintiff "described daily activities which are not limited to the extent

one would expect, given the complaints of disabling symptoms and limitations."[110]   The ALJ

---

[104]   Carey, 230 F.3d at 135; Martinez, 64 F.3d at 174.

[105]   TR 17.

[106]   Id.

[107]   Id. at 1447.

[108]   Id.

[109]   Id.

[110]   Id. at 15.

considered plaintiff's wife's report that plaintiff can "care for his personal needs, attends appointments, cleans laundry, shops for groceries, drives, and counts change."[111]  The ALJ also considered that plaintiff "had recently completed a commercial driver's license program to become a truck driver."[112]  The ALJ's consideration of these activities—which indicate that plaintiff is able to understand, remember and carry out simple instructions and attend and concentrate for an extended period of time—was proper under the Social Security regulations and Fifth Circuit case law.[113]

In sum, the ALJ's decision reflects the ALJ incorporated plaintiff's limitations into the RFC based on all of the relevant evidence.  The ALJ's RFC finding is supported by substantial evidence.[114]

## VII.  CONCLUSION

Because the ALJ did not commit reversible error and his decision is supported by substantial evidence, plaintiff's request to reverse the ALJ's decision and remand the case for an

---

[111]  Id. at 13 (citing Ex. 6E).

[112]  Id. at 17 (citing Ex. 12F4).

[113]  See 20 C.F.R. §§ 404.1545(e); 404.1529(c) (in assessing the limitations to be included in the RFC, the ALJ will consider all of the medical and non-medical evidence, including a claimant's daily living activities); Leggett, 67 F.3d at 565 n. 12 ("It is appropriate for the Court to consider the claimant's daily activities when deciding the claimant's disability status.") (citing Reyes v. Sullivan, 915 F.2d 151, 155 (5th Cir. 1990) (per curiam)).

[114]  Plaintiff also argues "[b]y failing to properly consider all the evidence of the record and accommodate all of Plaintiff's limitations supported by the record, the Commissioner has failed to meet his burden of proof at step five of the sequential evaluation."  Docket no. 17 at 6. But, as discussed, there is substantial evidence to support the ALJ's RFC finding and the ALJ incorporated plaintiff's limitations into the RFC based on all of the relevant evidence.  Plaintiff has not shown the Commissioner failed to met his burden of proof at step five.

award of benefits or, in the alternative, additional administrative proceedings[115] is **DENIED** and

the Commissioner's decision is **AFFIRMED**.  The District Clerk is requested to enter final

judgment in favor of defendant and against plaintiff, each side to bear its own costs.

      **ORDERED, SIGNED** and **ENTERED** this 28th day of October, 2016.

**PAMELA A. MATHY**
**UNITED STATES MAGISTRATE JUDGE**

---

[115]  Docket no. 17 at 7.

21